Matter of National Union Fire Ins. Co. of Pittsburgh, Pa (2023 NY Slip Op 05503)

Matter of National Union Fire Ins. Co. of Pittsburgh, Pa

2023 NY Slip Op 05503

Decided on November 1, 2023

Appellate Division, Second Department

Christopher, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 1, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ANGELA G. IANNACCI, J.P.
LINDA CHRISTOPHER
WILLIAM G. FORD
JANICE A. TAYLOR, JJ.

2021-08937
 (Index No. 54594/21)

[*1]In the Matter of National Union Fire Insurance Company of Pittsburgh, Pa, appellant, Allen Reichman, respondent.

APPEAL by the petitioner, in a proceeding pursuant to CPLR 5206(e) to compel the sale of a homestead to satisfy a money judgment, from an order and judgment (one paper) of the Supreme Court (Joan B. Lefkowitz, J.), dated October 13, 2021, and entered in Westchester County. The order and judgment granted the respondent's motion, in effect, pursuant to CPLR 404(a) and 3211(a) to dismiss the petition, denied the petition, and dismissed the proceeding.

McElroy, Deutsch, Mulvaney & Carpenter, LLP, New York, NY (Scott A. Levin, A. Augustus LaSala, and Matthew A. Lipman, pro hac vice, of counsel), for appellant.
Law Offices of Louis M. Spizzirro, P.C., Yonkers, NY (Amedeo Calandriello of counsel), for respondent.

CHRISTOPHER, J.

OPINION & ORDER
This appeal provides an opportunity to examine 18 USC § 3664(m)(1)(B) of the Mandatory Victims Restitution Act of 1996 (hereinafter the MVRA), wherein we determine that a crime victim named in a restitution order who has obtained an abstract of judgment and, as in this case, has docketed and recorded that abstract in accordance with the rules of this state may enforce that lien pursuant to this state's laws. For the reasons that follow, we hold that section 3664(m)(1)(B) provides a mechanism by which a private victim may enforce such a lien, and that the Supreme Court erred when it, inter alia, determined that the victim was limited to only recording the abstract of judgment as a lien and dismissed the petition of National Union Fire Insurance Company of Pittsburgh, PA (hereinafter National Union), in effect, pursuant to CPLR 404(a) and 3211(a)(7) for failure to state a cause of action.
Factual and Procedural History
On September 27, 2012, the United States of America indicted Allen Reichman, among others, charging Reichman with wire fraud and other offenses related to an alleged scheme to defraud Reichman's then employer, Oppenheimer & Co., Inc. (hereinafter Oppenheimer), and other entities. The indictment alleged that Reichman, along with others, fraudulently induced Oppenheimer to extend a $30 million loan to an entity to acquire an insolvent Oklahoma insurance company. Reichman received commission payments after the sale.
On July 15, 2015, Reichman pleaded guilty to one count of conspiracy to commit wire fraud in violation of 18 USC §§ 371 and 1349. Pursuant to an amended judgment dated August 5, 2015, Reichman was sentenced to 21 months of imprisonment and ordered to pay $10 million in restitution to Oppenheimer. In a section entitled "Special instructions regarding the payment of criminal monetary penalties," the following schedule of payments was set forth:
"1. A $10,000 payment to Oppenheimer in advance of [Reichman's] [*2]surrender. 2. Payments of $500 per month to Oppenheimer until [Reichman] surrenders. 3. Payments of the greater of $500 per month if [Reichman] is employed; $250 per month if he is not employed; or 10% of his gross wages, after he completes his sentence of incarceration, until his restitution is paid in full."
On September 14, 2020, the restitution order was amended to substitute National Union as the sole and direct restitution payee. National Union obtained an abstract of judgment (hereinafter the judgment) of the restitution order from the Clerk of the United States District Court for the Southern District of New York, which National Union docketed and recorded with the Westchester County Clerk on March 4, 2021. According to National Union, as of April 14, 2021, $12,750 had been paid toward satisfying the judgment, and $9,987,250 remained unpaid.
By petition dated April 14, 2021, National Union commenced this enforcement proceeding pursuant to CPLR 5206(e) to compel the sale of Reichman's interest in a home and to direct that the proceeds from the sale less the homestead exemption be applied to the principal balance in the amount of $9,987,250 remaining on the judgment. Reichman moved, in effect, pursuant to CPLR 404(a) and 3211(a)(1), (3), and (7) to dismiss the petition, arguing, inter alia, that 18 USC § 3664(m)(1)(B) does not provide a private right of enforcement for the crime victims named in restitution orders, which are not civil judgments. Therefore, Reichman argued, National Union did not have standing to commence this proceeding and the petition failed to state a cause of action. Reichman also argued that the petition should be dismissed because the plain language of the restitution order clearly set forth that payments are to be made pursuant to a payment schedule.
In response, National Union contended, inter alia, that under section 3664(m)(1)(B) of the MVRA, a crime victim is permitted to docket a restitution order as a civil lien, which is then fully enforceable in a manner provided for under New York law. Moreover, National Union argued that its lien, unlike a complaint, may not be dismissed pursuant to CPLR 3211(a)(7). National Union also argued that the payment schedule set forth in the restitution order does not preclude it from enforcing its lien against Reichman's property.
In an order and judgment dated October 13, 2021, the Supreme Court granted Reichman's motion, in effect, pursuant to CPLR 404(a) and 3211(a) to dismiss the petition on the ground that it failed to state a cause of action, denied the petition, and dismissed the proceeding. In discussing section 3664(m)(1) of the MVRA, the court stated that the government's right to enforce a criminal restitution judgment pursuant to 18 USC § 3664(m)(1)(A) is expansive, while a victim's rights under 18 USC § 3664(m)(1)(B) are limited. The court, relying on the decision of the Appellate Division, First Department, in Matter of Mikhlov v Festinger (173 AD3d 130), wrote that "'subsection B limits enforcement for victims to obtaining a lien. Thus, Congress set a "negative implication" that all other enforcement mechanisms, including the enforcement of an abstract judgment in a separate court proceeding, are unavailable to private victims' (Mikhlov v Festinger, 173 AD3d 130, 135 [1st Dept 2019], quoting Schultz v United States, 594 F3d 1120, 1123 [9th Cir. 2010])." The court reasoned that,
"[b]ased upon the 'negative implication' set by Congress regarding enforcement mechanisms of restitution orders by private victims, the text of subsection B, which expressly limits a victim's right to recording the abstract judgment as a lien, the federal government's expansive rights to enforce a restitution order, and the terms of the federal court's restitution order herein which provides for a schedule of payments and directs that restitution payments be made to the United States District Court Clerk who will then distribute same to [National Union], the court finds that the petition fails to state a claim upon which relief may be granted" (citations omitted).
National Union appeals.
Discussion
The enforcement of federal criminal restitution orders is addressed in 18 USC § 3664(m) of the MVRA. Pursuant to 18 USC § 3664(m)(1):
"(A)(i) An order of restitution may be enforced by the United States in the manner provided for in subchapter C of chapter 227 and [*3]subchapter B of chapter 229 of this title;[FN1] or
"(ii) by all other available and reasonable means.
"(B) At the request of a victim named in a restitution order, the clerk of the court shall issue an abstract of judgment certifying that a judgment has been entered in favor of such victim in the amount specified in the restitution order. Upon registering, recording, docketing, or indexing such abstract in accordance with the rules and requirements relating to judgments of the court of the State where the district court is located, the abstract of judgment shall be a lien on the property of the defendant located in such State in the same manner and to the same extent and under the same conditions as a judgment of a court of general jurisdiction in that State."
At issue here is the interpretation of 18 USC § 3664(m)(1)(B), the statutory provision that sets forth the enforcement mechanism available to victims of crimes named in restitution orders. "In interpreting a statute, a court 'must give effect to the unambiguously expressed intent of Congress'" (Natural Resources Defense Council, Inc. v United States Food & Drug Admin., 884 F Supp 2d 127, 141 [SD NY], quoting Chevron U. S. A. Inc. v Natural Resources Defense Council, Inc., 467 US 837, 843). Courts may "look to the general purpose of Congress in enacting the statute and to its legislative history" (United States v Braxtonbrown-Smith, 278 F3d 1348, 1352 [DC Cir]). Moreover, "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme" (Davis v Michigan Dept. of Treasury, 489 US 803, 809).
"Statutory construction . . . is a holistic endeavor. The meaning of a particular section in a statute can be understood in context with and by reference to the whole statutory scheme, by appreciating how sections relate to one another. In other words, the preferred meaning of a statutory provision is one that is consonant with the rest of the statute" (Auburn Hous. Auth. v Martinez, 277 F3d 138, 144 [2d Cir] [citations and internal quotation marks omitted]).
Further, "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant" (Corley v United States, 556 US 303, 314 [internal quotation marks omitted]).
Reichman argues that the plain language of 18 USC § 3664(m)(1)(B) unambiguously does not authorize a victim to enforce a restitution order beyond obtaining a lien on a defendant's property, while National Union contends that the statute unambiguously authorizes the enforcement of that lien.
Legislative History
The predecessor of the MVRA, the Victim and Witness Protection Act of 1982 (hereinafter the VWPA), included a victim restitution statute (see Pub L 97-291, 96 US Stat 1248 [97th Cong, 2d Sess, Oct. 12, 1982]). The VWPA, which became law on October 12, 1982 (see id.), recognized that victims, although critical to the functioning of the criminal justice system, were often ignored, and often "forced to suffer physical, psychological, or financial hardship first as a result of the criminal act and then as a result of contact with a criminal justice system unresponsive to the real needs of such victim[s]" (S Rep 97-532, 97th Cong, 2d Sess at 1). A significant purpose of the VWPA was "to ensure that the Federal Government does all that is possible within the limits of available resources to assist victims . . . of crime without infringing on the constitutional rights of the defendant" (id. at 2). "The premise of the [restitution provision] is that the court, in devising just [*4]sanctions for adjudicated offenders, should insure that the wrongdoer make goods [sic], to the degree possible [for] the harm he has caused his victim" (id. at 30). It was noted "that [the current] discretionary grant of authority is infrequently used and indifferently enforced" (id.). At the time of enactment, the enforcement provision designated 18 USC § 3579(h)[FN2] stated that "[a]n order of restitution may be enforced by the United States or a victim named in the order to receive restitution in the same manner as a judgment in a civil action" (former 18 USC § 3579[h], as added by Pub L 97-291, § 5, 96 US Stat 1248, 1253 [97th Cong, 2d Sess, Oct. 12, 1982]). Senate Report No. 97-352 stated that the enforcement provision "substantially increases the victim's chances of collecting restitution" (S Rep 97-532, 97th Cong, 2d Sess at 33). In November 1988, this provision was amended to read:
"An order of restitution may be enforced—
"(1) by the United States—
"(A) in the manner provided for the collection and payment of fines in subchapter B of chapter 229 of this title; or
"(B) in the same manner as a judgment in a civil action; and
"(2) by a victim named in the order to receive the restitution, in the same manner as a judgment in a civil action" (former 18 USC § 3663[h], as amended by Pub L 100-690, title VII, § 7042, 102 US Stat 4181, 4399 [100th Cong, 2d Sess, Nov. 18, 1988]).
This section remained the enforcement mechanism for federal criminal restitution orders until the enactment of the MVRA.
On April 24, 1996, the MVRA was enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996. The Senate Committee on the Judiciary noted that "while significant strides have been made since [the enactment of the VWPA in] 1982 toward a more victim-centered justice system, much progress remains to be made in the area of victim restitution" (S Rep 104-179, 104th Cong, 1st Sess at 13).
"[L]egislation [was] needed to ensure that the loss to crime victims is recognized, and that they receive the restitution that they are due. It [was] also necessary to ensure that the offender realizes the damage caused by the offense and pays the debt owed to the victim as well as to society" (id. at 12).
The legislation was
"intended first, to require that full restitution be ordered to the victims of all covered offenses in which there is an identifiable victim, second, to establish one set of procedures for the issuance of restitution orders in Federal criminal cases, and third, to consolidate the procedures for the collection of unpaid restitution with existing procedures for the collection of unpaid fines, while at the same time strengthening these procedures" (id. at 13-14).
The legislation was enacted with the premise that it was "essential that the criminal justice system recognize the impact that crime has on the victim, and, to the extent possible, ensure that offender [sic] be held accountable to repay these costs" (id. at 18). Former section 3663(h) of the VWPA was replaced by section 3664(m) of the MVRA (see Pub L 104-132, title II, §§ 205[a]; 206[a], 110 US Stat 1214, 1229, 1232 [104th Cong, 2nd Sess, Apr. 24, 1996]).
Our review of the legislative history of the MVRA, therefore, supports our conclusion [*5]that pursuant to 18 USC § 3664(m)(1)(B), once a victim named in a restitution order has obtained a lien on the property of the defendant, the victim may enforce that lien. The MVRA was an expression of Congress's recognition that while the criminal justice system under the VWPA had increased its focus on the victims of crimes, the area of victim restitution was still inadequately addressed. Thus, the MVRA sought to build on the progress that began with the VWPA in ensuring that victims of crimes recover for losses resulting from those crimes and receive the restitution they are due. The history evinces an intent to strengthen victims' rights of enforcement.
Statutory Interpretation
Contrary to Reichman's contention, Congress did not remove a victim's private right of enforcement by enacting the MVRA. Such an interpretation flies in the face of the plain language of the MVRA and fails to "give effect to the unambiguously expressed intent of Congress" (Natural Resources Defense Council, Inc. v United States Food & Drug Admin., 884 F Supp 2d at 141 [internal quotation marks omitted]), which was to expand the protections extended to crime victims, and "to the extent possible, to make victims whole, to fully compensate victims for their losses, and to restore victims to their original state of well-being" (United States v Simmonds, 235 F3d 826, 831 [3d Cir]; see United States v Pescatore, 637 F3d 128, 139 [2d Cir]). Reichman argues that in enacting the MVRA and changing the language of the enforcement provision of the restitution statute in the VWPA, Congress removed a victim's private right of enforcement. Under the VWPA, former 18 USC § 3663(h) stated:
"An order of restitution may be enforced—
"(1) by the United States—
"(A) in the manner provided for the collection and payment of fines in subchapter B of chapter 229 of this title; or
"(B) in the same manner as a judgment in a civil action; and
"(2) by a victim named in the order to receive the restitution, in the same manner as a judgment in a civil action" (emphasis added).
That section was replaced with 18 USC § 3664(m) under the MVRA, which provides:
"(1)(A)(i) An order of restitution may be enforced by the United States in the manner provided for in subchapter C of chapter 227 and subchapter B of chapter 229 of this title; or
"(ii) by all other available and reasonable means.
"(B) At the request of a victim named in a restitution order, the clerk of the court shall issue an abstract of judgment certifying that a judgment has been entered in favor of such victim in the amount specified in the restitution order. Upon registering, recording, docketing, or indexing such abstract in accordance with the rules and requirements relating to judgments of the court of the State where the district court is located, the abstract of judgment shall be a lien on the property of the defendant located in such State in the same manner and to the same extent and under the same conditions as a judgment of a court of general jurisdiction in that State."
The focus of Reichman's argument is that while the VWPA indicated that a restitution order is enforceable by both the government and the victim named in the order, by removing the word "and" in the MVRA, under the MVRA, only the government has the right of enforcement, and the victim is entitled only to procure a lien against the defendant's property, which serves as an insurance policy should the defendant attempt to transfer his or her interest in the property. We are not persuaded by this argument, which relies on a constrained reading of the actual language of the statutes. While the VWPA permitted a victim to enforce a restitution order in the same manner as a judgment in a civil action, the MVRA provides a mechanism for enforcement in that upon proper docketing, an [*6]"abstract of judgment shall be a lien on the property of the defendant located in such State in the same manner and to the same extent and under the same conditions as a judgment of a court of general jurisdiction in that State" (id. § 3664[m][1][B] [emphasis added]). Reichman's interpretation of 18 USC § 3664(m)(1)(B) renders the relevant operative language at the end of that section superfluous in contravention of the rules of statutory construction, which require construing a statute so as to give effect to all its provisions (see Corley v United States, 556 US at 314).
Notably, under New York law,
"[a] transcript of the judgment of a court of the United States rendered or filed within the state may be filed in the office of the clerk of any county and upon such filing the clerk shall docket the judgment in the same manner and with the same effect as a judgment entered in the supreme court within the county" (CPLR 5018[b]).
Once a transcript of a federal judgment is docketed with the office of a county clerk, it becomes a lien on the judgment debtor's real property in that county (see id.; United States v Hodes, 355 F2d 746, 748 [2d Cir]). Thus, as argued by National Union, under New York law, the properly docketed abstract of judgment of a restitution order becomes an enforceable judgment lien on the defendant's property located in the county where the abstract was docketed, and may be enforced, as in this case, by commencing a special proceeding pursuant to CPLR 5206(e) to compel the sale of real property (see id. §§ 5101, 5201[b]; see also 18 USC § 3664[m][1][B]).
Moreover, Reichman's reliance on Schultz v United States (594 F3d 1120) to support his contention that the language of 18 USC § 3364(m)(1)(A)(i)-(ii) and (B) creates a negative implication supporting his position that a victim named in a restitution order is limited to obtaining a lien, but not enforcing it, is misplaced. In Schultz, the United States Court of Appeals for the Ninth Circuit determined that because the remedy in the MVRA is exclusive, the victim could not use methods other than the mechanism specifically described in section 3664(m)(1)(B) to independently enforce a restitution order (see Schultz v United States, 594 F3d at 1121, 1123). The Ninth Circuit noted that "[t]he statute clearly gives victims the right to self-help in collecting restitution ordered for their benefit under the MVRA, via the specific mechanism described therein" (id. at 1123). The Ninth Circuit reasoned that
"[s]ubsection A of the statute expressly authorizes the United States to enforce a restitution order by the statutory remedy in the Act 'or by all other available and reasonable means.' Section 3664(m)(1)(B), however, prescribes only one method by which victims may enforce a restitution order. The negative implication is that Congress meant to prohibit enforcement in any other way" (id.).
Contrary to Reichman's interpretation, the "negative implication" referred to by the Ninth Circuit does not mean that section 3664(m)(1)(B) does not provide any method of enforcement of a restitution order to a private victim. Schultz only concludes that while Congress provided the government with expansive enforcement mechanisms in section 3664(m)(1)(A), under section 3664(m)(1)(B), a victim is limited to enforcement of a restitution order exclusively by the one mechanism prescribed therein. Thus, Schultz does not support Reichman's position. The fact that under section 3664(m)(1) a victim has more limited means of enforcement than the government does not mean that the victim has no means of enforcement.
Further, the statutory scheme of the MVRA "reflects a dramatically more pro-victim congressional attitude" that aligns with our view that section 3664(m)(1)(B) provides for a private victim's right of enforcement (United States v Perry, 360 F3d 519, 524 [6th Cir] [internal quotation marks omitted]). Significantly, unlike its predecessor, the VWPA, under the MVRA, restitution is mandatory rather than discretionary to victims of defendants convicted of certain offenses, including the crime to which Reichman pleaded guilty (see 18 USC § 3663A; United States v Perry, 360 F3d at 530). Also, under the MVRA, the court can no longer consider a defendant's economic circumstances when ordering restitution to be made to a victim, and must order restitution in the full amount without such consideration (see 18 USC § 3664[f][1][A]; United States v Perry, 360 F3d at 530; cf. former 18 USC § 3664[a]). Moreover, the MVRA provides for increased victim participation in the sentencing process through the United States Probation Office (see 18 USC § 3664[d][2]; United States v Perry, 360 F3d at 530; cf. former 18 USC § 3664[b]). Further, the [*7]MVRA expanded the government's methods of enforcement to include "all other available and reasonable means" (18 USC § 3664[m][1][A][ii]; see id. § 3613[a]-[f] [providing that restitution orders are enforceable by the United States under all provisions available for the enforcement of liens in that section]). Additionally, we note that both the VWPA and the MVRA provide a victim with an enforcement option in addition to that which is set forth in section 3664(m)(1)(B), that is, in any subsequent federal or state civil proceeding brought by the victim, the defendant is estopped from denying the essential allegations of the offense for which he or she was convicted and which involved the act giving rise to the order of restitution (see id. § 3664[l]; cf. former 18 USC § 3664[e]). Contrary to Reichman's contention, the fact that the statutory scheme vests broad powers of enforcement with the United States (see 18 USC §§ 3664[m][1][A]; 3613[a]-[f]) and provides for modification of any payment schedule upon notification by the Attorney General, the defendant, or the victim (see id. § 3664[k]), does not lead to the conclusion that under the MVRA, only the government is vested with the authority to enforce the order of restitution. Therefore, our reading of 18 USC § 3664(m)(1)(B) to permit a victim to enforce a properly obtained lien pursuant to state law is in context and consonant with the overall statutory scheme of the MVRA (see Davis v Michigan Dept. of Treasury, 489 US at 809; Auburn Hous. Auth. v Martinez, 277 F3d at 144).
Relevant Case Law
There are several United States District Court decisions which we find instructive and persuasive in that therein they acknowledge that pursuant to 18 USC § 3664(m)(1)(B), a victim who obtains a lien by properly docketing an abstract of judgment of a restitution order can then enforce that lien. In Consolidated Edison Co. of N.Y., Inc. v Razzouk (2022 WL 2532525, *4, 2022 US Dist LEXIS 119943, *13 [ED NY, Nos. 22-CV-0045[ARR] [LB], 11-CR-430[ARR]), the United States District Court for the Eastern District of New York, finding that it did not have federal subject matter jurisdiction over a special proceeding commenced by a victim to satisfy a federal criminal restitution order, held that "a victim seeking to enforce a restitution order may do so only by the strict terms of [18 USC § 3664(m)(1)(B)], which require a victim to obtain a judgment-lien that is thereafter enforceable exclusively in state court" (emphasis added). In reaching this determination, the court noted that pursuant to 18 USC § 3664(m)(1)(B), "once an abstract of judgment is registered, recorded, docketed, or indexed in state court—as it was here—it becomes a state judgment lien, and is thus enforceable in state court" (Consolidated Edison Co. of N.Y., Inc. v Razzouk, 2022 WL 2532525, *3, 2022 US Dist LEXIS 119943, *10). The court also pointed out that according to the United States Department of Justice's website, a victim who properly records an abstract of judgment and thereby obtains a lien against the defendant's property "will then have similar legal rights as any other civil judgment lien creditor, and this means [the victim] can collect the money from the defendant [themself]" (Restitution Process, US Dept of Just, https:www.justice.gov/criminal-vns/restitution-process [last updated Sept. 18, 2020]; see Consolidated Edison Co. of N.Y., Inc. v Razzouk, 2022 WL 2532525, *2 n 5, 2022 US Dist LEXIS 119943, *7 n 5). In Madigan v Bronstein (2018 WL 1768283, 2018 US Dist LEXIS 62288 [SD NY, No. 18mc61]), while recognizing that pursuant to section 3664(m)(1)(B), the victim's estate "ha[d] received what [was] effectively enforceable as a civil judgment lien on defendants' New York-based property under New York state law," the United States District Court for the Southern District of New York held that based on the record before it, a motion for discovery in connection therewith, was not properly brought in federal court (Madigan v Bronstein, 2018 WL 1768283, *3, 2018 US Dist LEXIS 62288, at *5). In United States v Manuelian (298 F Supp 3d 255 [D Mass]), the victim sought to enforce an order of restitution pursuant to the mechanism provided in section 3664(m)(1)(B). The victim sought an order authorizing the rescheduling of the sale of the defendant's property located in the Eastern District of New York. The defendant moved in the United States District Court for the District of Massachusetts, inter alia, to enjoin the sale. The court denied that branch of the defendant's motion which was to enjoin the sale, stating that "[c]ontrary to [the] defendant's assertion, a victim has the power to enforce a restitution order because the 'statute clearly gives victims the right to self-help in collecting restitution ordered for their benefit under the MVRA, via the specific mechanism described therein'" (United States v Manuelian, 298 F Supp 3d at 257, quoting Schultz v United States, 594 F3d at 1123).
In United States v Walker (353 F3d 130, 133 [2d Cir]), the United States Court of Appeals for the Second Circuit implicitly recognized that a victim has the right to enforce a lien obtained pursuant to 18 USC § 3664(m)(1)(B). In Walker, the Second Circuit held that under the MVRA, the sentencing judge was no longer required to state on the record that he or she considered [*8]the mandatory factors in setting payment schedules for restitution orders. In making such a determination, the court reasoned that the MVRA significantly diminished the discretion of sentencing courts, in that it required that "restitution to each victim must be 'in the full amount of each victim's losses . . . and without consideration of the economic circumstances of the defendant'" (United States v Walker, 353 F3d at 133, quoting 18 USC § 3664[f][1][A] [emphasis omitted]). The court further wrote:
"[t]he court's discretion is now restricted to crafting the schedule of payments during the time the defendant is under sentence. The significance of that schedule is diminished, however, by the fact that the victim may convert the restitution order into an abstract of judgment for the full amount of the restitution order, which 'shall be a lien on the property of the defendant . . . in the same manner and to the same extent and under the same conditions as a judgment of a court of general jurisdiction in that State'" (United States v Walker, 353 F3d at 133, quoting 18 USC § 3664[m][1][B]).
Other courts have similarly acknowledged a victim's right of enforcement pursuant to 18 USC § 3664(m)(1)(B) (see United States v Perry, 360 F3d at 524 [stating that the MVRA "allows victims named in restitution orders to obtain and register a judgment lien on the defendant's property that then operates as a lien on the property under state law"]; United States v Hawkins, 392 F Supp 2d 757, 759 [WD Va] [citing to 18 USC § 3664(m)(1)(B) and noting that "[u]nder the MVRA, a victim named in a restitution order has an independent right to enforce the restitution"]).
Moreover, Matter of Mikhlov v Festinger (173 AD3d 130) is factually distinguishable from the instant matter and does not support the determination that under section 3664(m)(1)(B), National Union cannot enforce the lien it obtained to satisfy a portion of a restitution order. In fact, Matter of Mikhlov tends to support National Union's position. The First Department concluded that a victim did not have standing to commence a proceeding to enforce a restitution order under the VPWA, which was the applicable statute. The First Department further concluded that "[e]ven if [the] MVRA were applicable, [the] petitioner would not have standing under that statute either" (Matter of Mikhlov v Festinger, 173 AD3d at 135). However, significantly, in Matter of Mikhlov, unlike in the instant matter, the victim had obtained an abstract of judgment, but he had never recorded it as a lien on the defendant's property nor commenced an action to enforce it (see id. at 136). Noting that section 3664(m)(1)(A)(ii) provides "all other available and reasonable means" of enforcement to the government, and that section 3664(m)(1)(B) limits enforcement for victims to obtaining a lien, the First Department, citing Schultz v United States (594 F3d 1120), concluded that "Congress set a 'negative implication' that all other enforcement mechanisms, including the enforcement of an abstract judgment in a separate court proceeding, are unavailable to private victims" (Matter of Mikhlov v Festinger, 173 AD3d at 135). The First Department reasoned that "[a]lthough the MVRA was adopted to make restitution for victims more widespread," it did not provide "that victims could bring private state court actions to obtain the ordered restitution . . . other than by obtaining and enforcing a lien granted under 18 USC § 3664(m)" (id. [emphasis added]). The First Department concluded that the victim, who had not recorded the abstract of judgment as a lien on the defendant's property, could not enforce the abstract of judgment itself, as this would contradict the language of 18 USC § 3664(m), which explicitly requires a lien. The First Department acknowledged that "[s]ome cases may support the conclusion that under the MVRA, a victim who has obtained a lien on property based on a restitution order may enforce that lien in a special court proceeding" (Matter of Mikhlov v Festinger, 173 AD3d at 135-136). Notably, in the instant matter, National Union is not seeking to enforce an abstract of judgment, but rather it is seeking to enforce a lien obtained by properly docketing an abstract of judgment. The implication in Matter of Mihklov is that if an abstract of judgment is properly docketed as a lien, as it was in the instant matter, it would be enforceable.
In Systemax, Inc. v Fiorentino (283 So 3d 415 [Fla Dist Ct App, 3d Dist]), relied on by Reichman and cited by the Supreme Court, the District Court of Appeal of Florida, Third District, considered the question of statutory interpretation that is now before this Court. The Systemax court held that 18 USC § 3664(m)(1) does not permit a private crime victim to pursue collection of a federal restitution order in state court. As will be further discussed herein, we disagree with Systemax. Citing Schultz v United States (594 F3d at 1123), the Systemax court determined that [*9]pursuant to 18 USC § 3664(m)(1), as "compared with the various forms of enforcement at the government's disposal, the victim's available tools for collecting restitution are meager at best" (Systemax, Inc. v Fiorentino, 283 So 3d at 421). The court also noted that "subsection (B) of § 3664(m)(1) does not even include the word 'enforcement'" (id.). It held that while a victim is permitted to obtain a lien by recording an abstract of judgment, the victim "is impeded from moving forward with execution" (id.). The Systemax court further determined that while prior to the enactment of the MVRA, under former 18 USC § 3663(h) of the VWPA, a victim had the right to enforce a restitution order, pursuant to the MVRA, "'an order of restitution is now enforceable only by the United States'" (Systemax, Inc. v Fiorentino, 283 So 3d at 421-422, quoting United States v Perry, 360 F3d at 542 [Gibbons J., dissenting]). The court emphasized that the amendments made to different sections of the statute under the MVRA "support the idea that the federal government is primarily responsible for enforcing federal restitution orders" (Systemax, Inc. v Fiorentino, 283 So 3d at 422).
Systemax's strained interpretation of section 3664(m)(1) is not only in contravention of the spirit and overall purpose of the MVRA, but as previously discussed, such an interpretation ignores, and renders superfluous, the language in subparagraph (B) that states, "the abstract of judgment shall be a lien on the property of the defendant located in such State in the same manner and to the same extent and under the same conditions as a judgment of a court of general jurisdiction in that State" (18 USC § 3664[m][1][B]). Additionally, the fact that the government's means of enforcement are expansive, or even that the government may be primarily responsible for enforcement of restitution orders, does not conflict with the victim's right to enforce a restitution order using the mechanism provided by section 3664(m)(1)(B). We note that while Systemax relies on the Sixth Circuit's decision in United States v Perry (360 F3d 519) to support the premise that under the MVRA, only the government can enforce a restitution order, the citation is to the dissent in Perry.
Other cases relied upon by Reichman are inapposite and fail to support his position. These cases do not address the issue at hand, that is, whether pursuant to section 3664(m)(1)(B), once a victim properly dockets an abstract of judgment of a criminal restitution order as a lien, the victim is then permitted to enforce that lien. Moreover, none of these cases compel a different result than that which we determine herein. In Kelly v Robinson (479 US 36), the United States Supreme Court interpreted section 523(a)(7) of the Bankruptcy Code, which "provides that a discharge in bankruptcy does not affect any debt '[to the extent such debt] is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss'" (Kelly v Robinson, 479 US at 41, quoting 11 USC § 523[a][7]), and held that this section "preserves from discharge any condition a state criminal court imposes as part of a criminal sentence" (Kelly v Robinson, 479 US at 50). The Court then determined that restitution obligations imposed as conditions of probation in state criminal proceedings were not dischargeable under Chapter 7 of the Bankruptcy Code (see id.). Reichman relies on Kelly for the proposition that restitution is part of the judgment of conviction and does not create a debt or a debtor-creditor relationship. However, in Kelly, which concerned a state court criminal restitution order, neither the MVRA (which had not yet been enacted), nor its predecessor, the VWPA, were at issue. Indeed, Kelly has no impact on the issues in the instant matter, which at the most basic level revolve around the propriety of the enforcement of a judgment lien by a victim named in a restitution order, pursuant to a state law proceeding.
In United States v Brown (744 F2d 905 [2d Cir]), the United States Court of Appeals for the Second Circuit held that the inclusion in a defendant's sentence of an order requiring him to make restitution to the victims of his crimes did not violate the defendant's Seventh Amendment right to trial by jury. In making that determination, the court concluded that restitution is not a civil adjudication and that "[t]he fact that a restitution order is enforceable in the same manner as a civil judgment, 18 U.S.C. § 3579(h),[[FN3]] does not transform the former into the latter" (id. at 910). First, it is noted that Brown was not decided under the MVRA, but rather under its predecessor, the VWPA. To the extent that Brown differentiates between a restitution order and a civil judgment, [*10]it is inconsequential to this matter, which concerns a victim's right under the MVRA to enforce a lien created by docketing an abstract of judgment of the restitution order as provided for in section 3664(m)(1)(B).
In United States v Stoerr (695 F3d 271 [3d Cir]), decided after the enactment of the MVRA, the United States Court of Appeals for the Third Circuit dismissed a nonparty's appeal from a restitution order, holding that a nonparty lacks standing to appeal a restitution order "because a non-party lacks a judicially cognizable interest in a criminal defendant's sentence, and is thus not aggrieved by the defendant's sentence" (id. at 277 [internal quotation marks omitted]). The court found, inter alia, that based on the statutory scheme of the MVRA, which assigns to the government the primary responsibility for ensuring proper restitution orders, it could not be inferred that Congress intended to permit nonparties "to appeal purportedly improper restitution orders" (id. at 279). Similarly, in United States v Hunter (548 F3d 1308 [10th Cir]), the United States Court of Appeals for the Tenth Circuit found that nonparties did not have a right to appeal from a defendant's judgment of conviction and sentence under the Crime Victims' Rights Act of 2004 and dismissed their appeal (see id. at 1310). The court analogized Hunter to those restitution cases that stand for the "proposition that nonparties have no right to post-judgment appeals in criminal cases" (id. at 1313), and concluded that in Hunter, there was "no precedent—nor any compelling justification—for allowing a non-party, post-judgment appeal that would reopen a defendant's sentence and affect the defendant's rights" (id. at 1315).
Once again, these cases cited by Reichman miss the point—National Union is not seeking to appeal the restitution order, nor to reopen or modify Reichman's sentence. Moreover, contrary to Reichman's contention, permitting National Union to enforce the lien obtained by duly recording the abstract of judgment pursuant to the specific method set forth in the MVRA will not effectively reopen or modify Reichman's sentence.
The Schedule of Payments in the Amended Judgment
We conclude that, as argued by National Union, and contrary to the Supreme Court's determination, the payment schedule set forth in the amended judgment does not preclude or limit National Union's enforcement rights under the MVRA, and that such a conclusion is consonant with the intent and spirit of the MVRA. In United States v Walker, the Second Circuit recognized that the significance of a payment schedule is diminished by the MVRA, which provides that a "victim may convert the restitution order into an abstract of judgment for the full amount of the restitution order, which 'shall be a lien on the property of the defendant . . . in the same manner and to the same extent and under the same conditions as a judgment of a court of general jurisdiction in that State'" (United States v Walker, 353 F3d at 133, quoting 18 USC § 3664[m][1][B]). In the same vein, in United States v Manuelian, the United States District Court for the District of Massachusetts noted that "[t]he MVRA expressly provides for the enforcement of a restitution order by a victim and a district court's decision to implement the schedule of payments with respect to the restitution order does not interfere with that right" (United States v Manuelian, 298 F Supp 3d at 257).
In United States v Hawkins (392 F Supp 2d 757), the United States District Court for the Western District of Virginia held that a defendant's compliance with a payment schedule in a restitution order did not preclude enforcement of the order by other means. The court looked to the underlying policy of the MVRA, which is to ensure that crime victims receive the restitution they are due, and found that this policy would be undermined "if the court-imposed payment schedule created a right in the defendant to pay no more than the ordered installments" (id. at 759). The court noted that "a payment schedule is simply one means of ensuring that restitution will be paid by the defendant," and acknowledged that "[u]nder the MVRA, a victim named in a restitution order has an independent right to enforce the restitution" (id.; see 18 USC § 3664[m][1][B]).
Reichman's Motion to Dismiss
A petition for a judgment pursuant to CPLR 5206(e) is subject to a motion to dismiss pursuant to CPLR 3211(a), contrary to National Union's contention. A proceeding pursuant to CPLR 5206(e) is a special proceeding governed by article 4 of the CPLR (see id. § 5206[e]). Pursuant to CPLR 404(a), a "respondent may raise an objection in point of law by setting it forth in his [or her] answer or by a motion to dismiss the petition" (see e.g. Matter of Cardinale v New York City Dept. of Educ., 204 AD3d 994, 996).
However, the Supreme Court should have denied Reichman's motion, in effect, pursuant to CPLR 404(a) and 3211(a) to dismiss the petition. The petition and documentary evidence demonstrated that in accordance with 18 USC § 3664(m)(1)(B), National Union obtained [*11]an abstract of judgment of the restitution order at issue from the Clerk of the United States District Court for the Southern District of New York, which was docketed with the Westchester County Clerk (see CPLR 5018[c]), and thus, had an enforceable lien on Reichman's property (see Consolidated Edison Co. of N.Y., Inc. v Razzouk, 2022 WL 2532525, 2022 US Dist LEXIS 119943). Therefore, the petition sufficiently alleges that National Union is a judgment creditor permitted to commence this proceeding pursuant to CPLR 5206(e).
Remaining Contention
National Union's remaining contention is without merit.
Accordingly, the order and judgment is reversed, on the law, Reichman's motion, in effect, pursuant to CPLR 404(a) and 3211(a) to dismiss the petition is denied, the petition is reinstated, and the matter is remitted to the Supreme Court, Westchester County, for further proceedings in accordance herewith.
IANNACCI, J.P., FORD and TAYLOR, JJ., concur.
ORDERED that the order and judgment is reversed, on the law, with costs, the respondent's motion, in effect, pursuant to CPLR 404(a) and 3211(a) to dismiss the petition is denied, the petition is reinstated, and the matter is remitted to the Supreme Court, Westchester County, for further proceedings in accordance herewith.
ENTER:
Darrell M. Joseph
Acting Clerk of the Court

Footnotes

Footnote 1:Subchapter C of chapter 227 addresses sentences directing the payment of a fine (see 18 USC part II, ch 227, subch C), and subchapter B of chapter 229 addresses the postsentence administration of fines (see 18 USC part II, ch 229, subch B).

Footnote 2:In October 1984, section 3579(h) was renumbered section 3663(h) and amended (see former 18 USC § 3663[h], as renumbered and amended by Pub L 98-473, title II, § 212[a][1], [3], 98 US Stat 1837, 2010 [98th Cong, 2d Sess, Oct. 12, 1984]).

Footnote 3:At the time of the enactment of the VWPA, the enforcement provision designated 18 USC § 3579(h) stated that "[a]n order of restitution may be enforced by the United States or a victim named in the order to receive restitution in the same manner as a judgment in a civil action."